# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| THOMAS FARRUGIA, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 2:13-cv-104-WTL-MJD |
| ) | |
| WARDEN, USP-TERRE HAUTE, ) | |
| ) | |
| Respondent. ) | |

**Entry Denying Petition for Writ of Habeas
Corpus and Directing Entry of Final Judgment**

**I.**

**Background**

At the time this action was filed, Thomas Farrugia was confined at the Federal Correctional Complex in Terre Haute, Indiana. He brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The underlying criminal case, No. 1:92-cr-5164, charged Farrugia and four co-defendants with violations pertaining to the manufacture of methamphetamine and the possession of ephedrine, a necessary precursor in the manufacture of methamphetamine. Farrugia was convicted by a jury in the Eastern District of California. His conviction and sentence were affirmed on appeal by the Ninth Circuit Court of Appeals. *United States v. Farrugia,* 1996 WL 403026 (9th Cir. 1996). Farrugia filed a motion to vacate pursuant to 28 U.S.C. § 2255. That motion was docketed as No. CV-F-98-5252 and was denied on October 10, 2000. Both the trial court and the Ninth Circuit declined to issue a certificate of appealability. The Ninth Circuit later denied the petitioner's request for leave to file a second or successive § 2255 motion.

In the Order denying petitioner's Section 2255 motion, the court discussed petitioner's claim that he was denied the effective assistance of counsel because of counsel's failure to analyze the substances seized in connection with the underlying criminal investigation: "Farrugia claims that counsel's investigation and preparation for trial was ineffective because of his failure to obtain sufficient scientific analysis of the 'suspected meth' seized in the search of the Oakley residence as well as the residue collected from the drainage pit and the glassware at the Lancaster site. . . . After reviewing Farrugia's motions, the file, and the transcripts the court concludes that counsel's performance was not deficient. Counsel did not fail to investigate and obtain sufficient analysis of the substances involved in the case. . . . In addition, even if counsel's performance had been found to be deficient, Farrugia cannot show prejudice. As the government correctly points out, assuming the ephedrine was only 50% pure as Farrugia claims, the actual methamphetamine quantity produced would have been 13.25 or 6.2 kilograms (6200 grams). At the time of Farrugia's sentencing, 100 grams of actual methamphetamine triggered a ten-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A)(viii), and also triggered the enhancement pursuant to 21 U.S.C. § 851. The quantity of methamphetamine that could have been produced using the 50% purity figure Farrugia states is correct would result in the same mandatory life sentence. Thus, Farrugia cannot show prejudice."

Then ensued a torrent of post-judgment motions in the trial court in which the petitioner asserted the same claim as is presented here—all calculated to produce and obtain a chemical analysis of seized chemicals. The trial court has exhaustively considered and rejected those efforts. The following are illustrative of the petitioner's efforts and the trial court's rulings:

- In an Order issued on May 9, 2006, the trial court denied Farrugia's motion for an order compelling the Government to perform chemical tests of certain government exhibits (seized chemical samples). The court reviewed the trial evidence at some length, reviewed the claims and conclusions in the § 2255 proceeding, and denied the motion. This ruling

was affirmed on appeal in *United States v. Farrugia*, No. 06-1034 (9th Cir. July 13, 2007)("The district court properly concluded that Farrugia's motions are unrelated to any actions currently pending.").

- The trial court's denial of the petitioner's Rule 60(b) motion directed to the disposition of the § 2255 motion contains the following: "As noted in the Order denying petitioner's Section 2255 motion, evidence was presented by petitioner at his jury trial that petitioner's Formula J made a copycat drug that altered ephedrine to look like methamphetamine, that the suspected methamphetamine seized at petitioner's Oakley residence was not methamphetamine but ephedrine processed to look like methamphetamine, that a synthesis using petitioner's Formula J process was performed by petitioner's expert witness, who testified that the resulting process was simply ephedrine in another form and who testified that petitioner's Formula J would not produce methamphetamine. Notwithstanding this evidence and the other evidence described in the Order denying petitioner's Section 2255 motion, the jury did not believe petitioner or petitioner's expert witness."

- In an Order issued by the trial court on October 29, 2012, the court explained that the composition of the substances was irrelevant to Plaintiff's claim of actual innocence so long as the evidence indicating that the substance recovered from the Oakley residence did contain ephedrine and that it was in Plaintiff's possession was not refuted.

- Reconsideration of the foregoing Order was sought, producing an Order issued on January 8, 2013, in which the trial court wrote: "Plaintiff is not entitled to troll for additional facts merely to contradict non-critical facts alleged by the government or to build up a marginally better case than may have been presented on his behalf at trial. . . . Plaintiff's argument fails now for the same reason as before; Plaintiff has failed to show how the requested testing of the Substances would materially advance his claim of actual innocence."

The petitioner filed a civil suit to obtain access to the seized substances for test, but the action was dismissed for failure to state a claim upon which relief could be granted. *Farrugia v. Lockyear*, 2010 WL 583660 (E.D.Calif. Jan. 24, 2011), and *Farrugia v. Rooney*, 2012 WL 5328642 (E.D.Calif. Oct. 29, 2012). Finally, the petitioner's co-defendant Donald Kapperman (convicted in a separate trial after a mistrial had been declared as to him in the joint trial) filed a motion in the criminal case, No. 1:92-cr-5164, along the same lines. A comprehensive ruling was made:

> The matter now before the court is styled as a motion for injunctive and declaratory relief to compel production of trial exhibits for purposes of chemical testing (hereinafter, the "Motion"). As such, Plaintiff's motion represents the most recent in a long line of pleadings by both Plaintiff and co-Defendant Farrugia to obtain samples of certain trial exhibits for "complete chemical analysis." The court notes

that both Plaintiff and co-Defendant Farrugia are explicit in their intention to obtain the complete chemical testing of the trial exhibits for the purpose of pursuing later claims of actual innocence. . . .

The purpose of Farrugia's civil case was to secure from the California Bureau of Narcotic Enforcement samples of the three Substances that have been for several years in the custody of the Bureau so that the samples can be "completely chemically analyzed" to determine the presence and amount of binders, adulterants and other chemical characteristics. Prior to the institution of Farrugia's civil action, the docket of the underlying criminal case reflects some fifty or more instances of motions or requests all aimed at the same purposes—the thorough chemical analysis of the Substances to definitively show their differences of composition and, by inference, their different origins. Although both defendants in the criminal case made separate and multiple requests and motions before conviction to accomplish this "complete analysis," it appears that the vast majority, if not all, of the post-conviction motions, requests or separate actions were undertaken by co-Defendant Farrugia.

Kapperman's, instant motion appears to be in the nature of a "me too" accompaniment to Farrugia's most recent effort as reflected in his Fourth Amended Complaint to his civil case. The court notes parenthetically that Kapperman's motion coincides with the fact that, for the first time since their commitment to the custody of the Bureau of Prisons, both Kapperman and Farrugia are currently housed at the federal facility in Terra Haute, Indiana.

Kapperman's Motion fails to set forth any legal basis of entitlement to relief other than to make the conclusory assertion that relief is compelled by the Supreme Court's holding in *Skinner v. Switzer,* 31 S.Ct. 1289 (2011). The court's October 29 Order considered at some length whether Farrugia could rely on 42 U.S.C. § 1983 and *Bivins* to assert his claim to compel production of the requested samples of the Lancaster and Oakley Substances and reached a negative conclusion. Since Kapperman's Motion lacks any legal framework for analysis of entitlement to relief, the court will note that the motion is subject to denial on that ground and will skip to the more fundamental and illustrative question of whether Kapperman can claim any constitutionally cognizable interest in procuring the requested samples of the Substances.

. . . In practical terms, this means that Plaintiff can only claim an interest in the "compete chemical analysis" of any of the Substances to the extent that the analysis would tend to show that Plaintiff is factually innocent of the charges of his conviction.

Plaintiff's "me too" Motion for injunctive relief asserts, as did Farrugia's complaint, that the complete chemical analysis of the Substances will prove with certainty that the Lancaster and Oakley Substances are different from the Fresno Substance and different from each other. As the court asked semi-rhetorically in its October 29 Order, "[h]ow does that proof advance Plaintiff's claim of factual innocence?" October 29 Order at 8:28–29. The answer, as the court has pointed out, is that the proffered evidence does not advance claims of factual innocence at all. Plaintiff's conviction with regard to the charge of possession of a listed substance requires only that evidence is offered to show that the powdery white Lancaster

Substance was possessed by Plaintiff and that it *contained* ephedrine. The fact that the Lancaster Substance was not pure ephedrine raises a ground for dispute as to whether the box that was found in Lancaster during the search was a box of the same Fresno Substance that the government represented was purchased by Kapperman and transported to Lancaster; but it does not by any means prove that Kapperman was innocent of possessing ephedrine.

As has been repeatedly pointed out by the court in past opinions and orders, both Kapperman and Farrugia were able to present evidence at trial that the Substances they were accused of possessing were different in chemical make-up from each other and from the Fresno Substance. As Kapperman puts it, the Lancaster Substance was "crushed up pills." Whether the jury believed Kapperman's assertion or not, even Kapperman's own analysis of the Lancaster Substance showed that it contained ephedrine and that fact, along with evidence that the Substance was in Kapperman's control, is sufficient to support the jury's verdict. Similarly, Kapperman's conviction on the count of conspiracy to manufacture methamphetamine does not require a showing that there was any methamphetamine present in either Substance or in residue found at the Lancaster site; it requires only that materials were found that indicate the capacity to manufacture methamphetamine and evidence was adduced that showed an intent to carry out the manufacture of methamphetamine.

As previously mentioned, Plaintiff's Motion fails to state any legal basis for relief and must be dismissed on that account. For the most part, the foregoing discussion, as well as the more extensive discussion in the court's October 29 Order dismissing Farrugia's civil claims, is offered in an effort to explain to both Plaintiff and Farrugia why this court has denied, now denies, and will continue to deny any and all efforts to compel production of sample of any or all of the Substances for the purpose of "complete forensic chemical analysis." So far as this court is concerned the matter is now settled and any future efforts to accomplish the sought-after analyses will be summarily dismissed because (1) the evidence the parties seek to adduce is cumulative to evidence that was previously provided at trial, and (2) because the sought-after evidence has no demonstrated relevance to the parties' claims of actual innocence.

*Kapperman v. United States*, 2012 WL 5499869, *1-5 (E.D.Calif. Nov. 13, 2012).

On September 3, 2013, on June 23, 2014, and again on January 5, 201, the petitioner filed a *Renewed Notice of Intent to Have Untested Trial Exhibits . . . Analyzed at His Own Expense to Determine Their Exact Chemical Make Up and Use as Exculpatory Evidence*, and on June 23, 2014 he filed a motion for mandamus relief, which the trial court docketed as another motion for relief pursuant to 28 U.S.C. § 2255. PACER records show the filing of these items.

**Discussion**

A federal prisoner may use a § 2241 petition for a writ of habeas corpus to attack his conviction or sentence only if § 2255 is 'inadequate or ineffective.'" *Hill v. Werlinger,* 695 F.3d 644, 645 (7th Cir. 2012) (quoting 28 U.S.C. § 2255(e)). Nevertheless, 28 U.S.C. § 2244(a) prevents a federal inmate from utilizing § 2241 to challenge the validity of a federal court conviction or sentence which has previously been presented to the federal court for determination, such as when challenged by way of federal collateral review. *Valona v. United States*, 138 F.3d 693, 694–65 (7th Cir. 1998) (concluding that § 2244(a) bars successive petitions under § 2241 directed to the same issue concerning execution of a sentence); *Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997) (barring as a second § 2241 petition a repetitive challenge to application of time credits in the administrative calculation of a federal sentence). A motion for relief pursuant to § 28 U.S.C. § 2255 is a collateral challenge. *United States v. Evans*, 224 F.3d 670, 673 (7th Cir. 2000).

The savings clause of § 2255(e) does not give Farrugia a further bite at the post-conviction relief apple. No argument he presents dictates otherwise. Apart from the barrier created by § 2244(a), in order to take advantage of the savings clause Farrugia must rely on a decision that was not available to him during proceedings on his motion to vacate. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013); *In re Davenport*, 147 F.3d 605, 611–12 (7th Cir. 1998). He does not do so.

If the petitioner thought the trial court's denial of his § 2255 motion and the denial of his multitudinous other motions compel chemical testing of the seized items were incorrect, his remedy was to appeal. In several instances, that is precisely what he has done, though without success. A belated petition under § 2241 is not a proper substitute. *See Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002).

"The essential point is that a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits." *Potts v. United States,* 210 F.3d 770 (7th Cir. 2000); *see also Swanson v. Lariva*, 2014 WL 4705396 (S.D.Ind. Sept. 22, 2014).The petitioner had that opportunity and he used it. Recalling that "the docket of the underlying criminal case reflects some fifty or more instances of motions or requests all aimed at the same purposes," moreover, it is no exaggeration to observe that he has both used and abused that opportunity through his parade of redundant motions and requests in the trial court. He is not entitled to more.

Farrugia's petition for writ of habeas corpus is denied.

## II.

Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date: 4/7/15

*William T. Lawrence* (signature)

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Thomas Farrugia
Reg. No. 79966-098
USP
PO Box 24550
Tucson, AZ 85734

Electronically Registered Counsel